1  Barbara A. Blackburn, Bar No. 253731
   bblackburn@littler.com
2  Douglas L. Ropel. Bar No. 300486
   dropel@littler.com
3  Lauren J. Orozco, Bar No. 332880
   lorozco@littler.com
4  LITTLER MENDELSON, P.C.
   500 Capitol Mall, Suite 2000
5  Sacramento, California 95814
   Telephone:   916.830.7200
6  Fax No.:   916.561.0828

7  Attorneys for Defendant
   ENLOE MEDICAL CENTER
8

9                    UNITED STATES DISTRICT COURT

10                  EASTERN DISTRICT OF CALIFORNIA

11

12
   CHRISTIAN LOVGREN and GINA CUNEO,        Case No.
13 individuals, on behalf of themselves, and on
   behalf of all persons similarly situated,   *[Removed from Butte Superior Court Case No.
14                                              24CV00200]*
                 Plaintiffs,
15                                           **NOTICE TO FEDERAL COURT OF
         v.                                  REMOVAL OF CIVIL ACTION**
16
   ENLOE MEDICAL CENTER, a California        **[28 U.S.C. §§ 1331, 1441, and 1446]**
17 Corporation; and DOES 1 through 50, inclusive,
18               Defendants.                 Trial Date:       Not Yet Set
                                             Complaint Filed:  January 18, 2024
19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION

1   **TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN**

2   **DISTRICT OF CALIFORNIA, PLAINTIFFS CHRISTIAN LOVGREN AND GINA CUNEO,**

3   **AND THEIR ATTORNEYS OF RECORD:**

4         **PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1331, 1441(a) and 1446, Defendant

5   ENLOE MEDICAL CENTER ("Enloe") hereby removes the above-captioned action from the

6   Superior Court for the State of California, in and for the County of Butte to the United States District

7   Court, Eastern District of California.  Removal is proper based on 29 U.S.C. § 185(a).  This action is

8   removed pursuant to the procedures found in 28 U.S.C. §§ 1441 and 1446, and removal jurisdiction is

9   based on federal question pursuant to 28 U.S.C. § 1331.

10   **I.      PROCEDURAL BACKGROUND**

11         On January 18, 2024, Plaintiffs Christian Lovgren and Gina Cuneo ("Plaintiffs") filed a

12   Complaint in the Superior Court of the State of California, County of Butte, which is captioned as

13   follows: *Christian Lovgren and Gina Cuneo, individuals, on behalf of themselves, and on behalf of all*

14   *persons similarly situated, v. Enloe Medical center, a California Corporation, and Does 1 through*

15   *50, inclusive*, Case No. 24CV00200 ("Complaint").  The Complaint contains eleven causes of action,

16   alleging:  (1) Unfair Competition in Violation of California Business & Professions Code §§ 17200,

17   *et seq*., (2) Failure to Pay Minimum Wages in Violation of California Labor Code §§ 1194, 1197 &

18   1197.1; (3) Failure to Pay Overtime Wages in Violation of California Labor Code § 510; (4) Failure

19   to Provide Required Meal Periods in Violation of California Labor Code §§ 226.7 & 512 and the

20   Applicable IWC Wage Order; (5) Failure to Provide Required Rest Periods in Violation of California

21   Labor Code §§ 226.7 & 512 and the Applicable IWC Wage Order; (6) Failure to Provide Accurate

22   Itemized Wage Statements in Violation of California Labor Code § 226; (8) Failure to Reimburse

23   Employees for Required Expenses in Violation of California Labor Code § 2802; (9) Failure to Pay

24   Sick Pay Wages in Violation of California Labor Code §§ 201-203, 233, 246; (10) Discrimination and

25   Retaliation in Violation of FEHA; and (11) Constructive Discharge and Other Adverse Employment

26   Actions in Violation of Public Policy.  Defendant filed its Answer on April 16, 2024. Declaration of

27   Barbara Blackburn ("Blackburn Decl.") **Exhibit 2** (Defendant's Answer).

28         Notably, this case (Butte County Case No. 24CV00200) is closely related to, and inextricably

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION

2

1  intertwined with a case by the same name, with the same parties, Butte County Case No. 24CV00490,

2  which Defendant is also removing to this Court on the same day.  Defendant will file Notice(s) of

3  Related Case, pursuant to E.D. Cal. Local Rules, forthwith.

4  True and correct copies of the: (1) Summons; (2) Complaint; (3) Civil Case Cover Sheet; (4)

5  Notice of Assignment and Case Management Conference; and (5) Alternative Dispute Resolution

6  Packet are attached to the supporting Blackburn Decl. as **Exhibit 1**.

7  As of the date of this Notice of Removal, no other parties have been named or served with the

8  Summons and Complaint, to Defendant's knowledge.

9  **II.    REMOVAL JURISDICTION**

10  This Court has jurisdiction because a federal question exists under Section 301 of the Labor

11  Management Relations Act ("LMRA"), which provides: "Suits for violation of contracts between an

12  employer and a labor organization representing employees in an industry affecting commerce as

13  defined in this [Act], or between any such labor organizations, may be brought in any district court of

14  the United States having jurisdiction of the parties, without respect to the amount in controversy or

15  without regard to the citizenship of the parties."  29 U.S.C. § 185(a) (hereinafter, "Section 301").

16  Section 301 preemption and jurisdiction apply because the Complaint includes claims that can

17  only be brought as contractual claims under a collective bargaining agreement ("CBA"), because of

18  the application of express CBA exemptions in the California Labor Code.  Section 301 also applies

19  because Plaintiffs assert they are entitled to relief which is controlled by the CBA and makes claims

20  the resolution of which require interpretation of the CBA.

21  If any claims in the Complaint are not preempted by Section 301, the entire action is still

22  removable under 28 U.S.C. § 1441(c) because this Court has supplemental jurisdiction under 28

23  U.S.C. § 1367.  All claims in the Complaint are sufficiently related to form part of the same case or

24  controversy.

25  **III.    REMOVAL PROCEDURE**

26  **A.    Venue is Proper in This District**

27  Plaintiffs filed this action in the Superior Court of California, County of Butte.  Therefore,

28  pursuant to 28 U.S.C. §§ 84(a), 1391, and 1441(a), venue properly lies in the United States District

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200
NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION           3

1   Court for the Eastern District of California.

2   **B.      This Removal is Timely**

3          Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal is timely because Defendant filed it

4   within thirty (30) days after the service of the Summons and Complaint filed in the State Court Action.

5   Service occurred on March 18, 2024.  Blackburn Decl., **Exhibit 1**.  This Notice of Removal is timely

6   filed within thirty (30) days thereafter.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526

7   U.S. 344, 347-48, 354 (1999) (holding removal period is triggered by completed service of process).

8   **C.      The Parties, the Union and the Relevant Collective Bargaining Agreements.**

9          Enloe is a company engaged in an industry affecting commerce within the meaning of the

10  National Labor Relations Act (the "NLRA").  29 U.S.C. §§ 152(2), (6), (7), and 185(a).  The Service

11  Employees International Union (the "SEIU") and the California Nurses Association (the "CNA," and

12  collectively with the SEIU, the "Unions") are labor organizations under the NLRA and LMRA.  29

13  U.S.C. §§ 152(5) and 185(a).  Enloe and the Unions, at all relevant times, have been parties to separate

14  collective bargaining agreements ("CBA").

15         At all relevant times during his employment with Enloe, Plaintiff Lovgren was a Union–

16  represented employee represented by the SEIU and, therefore, subject to the SEIU CBA.  Declaration

17  of Gaye Devor ("Devor Decl."), ¶ 5.   The SEIU CBA was applicable to Plaintiff Lovgren's

18  employment, as well as the employment of approximately one third of the putative class.  *Id*.  A true

19  and correct copy of the SEIU CBA is attached to the Devor declaration as **Exhibit A**.  *Id*. at ¶ 4; *see*

20  *also* Defendant's Request for Judicial Notice [RJN] at ¶ 1.

21         The CNA CBA was applicable to the employment of another one third (approximately) of the

22  putative class, including all nurses employed by Enloe.  Devor Decl., at ¶ 13.  A true and correct copy

23  of the CNA CBA in effect during the time at issue during this lawsuit, along with the letter agreements

24  to extend the CNA CBA through May 4, 2024, are attached to the Devor declaration as **Exhibits B**

25  **and C**.  *Id*. at ¶ 12; *see also* Defendant's Request for Judicial Notice [RJN] at ¶ 2.

26  **D.      This Court has Jurisdiction Under Section 301**

27         This Court has jurisdiction because a federal question exists under Section 301 of the Labor

28  Management Relations Act ("LMRA"), which provides:

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION                                    4

1

> "Suits for violation of contracts between an employer and a labor
> organization representing employees in an industry affecting commerce
> as defined in this [Act], or between any such labor organizations, may
> be brought in any district court of the United States having jurisdiction
> of the parties, without respect to the amount in controversy or without
> regard to the citizenship of the parties." 29 U.S.C. § 185(a) (hereinafter,
> "Section 301").

Section 301 preemption and jurisdiction apply because the Complaint includes claims that can only be brought as contractual claims under a CBA as a result of multiple, express collective bargaining agreements exemptions in the California Labor Code.  Section 301 also applies because Plaintiffs assert they are entitled to relief that is controlled by the CBA and makes claims of which the resolution require interpretation of the CBA.

If any claims in the Complaint are not preempted by Section 301, the entire action is still removable under 28 U.S.C. § 1441(c), because this Court has supplemental jurisdiction under 28 U.S.C. § 1367.  All claims in the Complaint are sufficiently related to form part of the same case or controversy.

## IV.   FACTUAL BACKGROUND

### A.   Plaintiff Lovgren's Employment[1]

Enloe employed Plaintiff Lovgren as a Pharmacy Tech (Driver).  Devor Decl., ¶ 3.  In this position, his employment was governed by the CBA.  *Id.* at ¶ 4.  From June 26, 2020, through June 27, 2021, Plaintiff Lovgren's base wages under the SEIU CBA were $26.53 and $27.22.  *Id.* at ¶ 6.  From June 28, 2021, through June 26, 2022, Lovgren's base wages under the SEIU CBA were $27.22

---

[1]   While Plaintiff Cuneo as not subject to a CBA, courts have readily enforced removal of actions brought on behalf of a group of unionized employees, even where the named plaintiff was not a member of any union.  In *Braswell v. AHMC San Gabriel Valley Med. Ctr. LP*, No. CV2109959MWFAGR, 2022 WL 707206 (C.D. Cal. Mar. 8, 2022), defendant had removed based on LMRA preemption, even though plaintiff was not a party to the CBA. The court denied plaintiff's motion to remand, reasoning that "[e]ven if Plaintiff and the State are not parties to the qualifying CBAs, the Court must still interpret the agreements to determine whether a violation occurred as to the Aggrieved Employees. Indeed, that is the only basis upon which the State of California could recover penalties under the facts of this case. Where, as here, a plaintiff files suit on behalf of employees covered by a qualifying CBA, her own lack of CBA coverage is not a defense to preemption under *Curtis*." *Id*. at *4.  Likewise, courts have granted summary adjudication of such claims brought on behalf of a group of unionized employees, even where the named plaintiff was not a member of any union. *See Shwiyat v. Martin Marietta Materials, Inc*., 2023 U.S. Dist. LEXIS 226843 (N.D. Cal., Corley, Dec. 20, 2023) (granting in part summary judgment to Defendant on meal, rest, overtime, and related derivative claims as to members of the putative PAGA cohort who were union-represented employees, even where plaintiff was not).

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION                5

and $27.90. *Id.* From June 27, 2022, through the end of his employment on June 12, 2023, Lovgren's base wage rates under the SEIU CBA were $28.74 and $29.46. *Id.* At all relevant times, Plaintiff Lovgren's wage rate under the CBA was in excess of 130% of the California minimum wage.

### B. Relevant Collective Bargaining Agreement Provisions – SEIU CBA

The term of the SEIU CBA in effect during the years relevant to this case was July 1, 2021 through June 20, 2024. Devor Decl., ¶ 4, **Exhibit A**. Excerpts from the provisions of the SEIU CBA relevant to this Removal include the following:

#### 1. <u>Wage Rates and Overtime</u>

**ARTICLE 11, WORKWEEK. Section A, Definition of Overtime.**

**1.** The employee's workday and workweek shall be designated by the Employer. The Employer's workday shall be twenty-four consecutive hours beginning at 12:00am. The Employer's workweek shall be a consecutive period of seven (7) days, beginning at 12:00am on Sunday.

**2. For employees on eight (8) hour shifts.** Straight-time hourly rates shall apply up to a maximum 80 hours per 14 day period, or eight (8) hours per day. All work in excess of eight (8) hours in a workday or 80 hours in a 14 day pay period shall be paid at the rate of one and one-half times (1-½) the regular straight-time hourly rate. All work in excess of twelve (12) hours per workday shall be paid at the rate of two times (2x) the regular straight-time hourly rate.

**3. For employees on ten (10) hour shifts.** Straight-time hourly rates shall apply up to a maximum forty (40) hours per workweek, or ten (10) hours per day. All work in excess of forty (40) hours in a workweek shall be paid at the rate of one and one-half times (1-½) the regular straight-time rate. All work in excess of ten (10) hours in a workday, up to twelve (12) hours, shall be paid at the rate of one and one- half times (1-½) the regular straight-time hourly rate. All work in excess of twelve (12) hours in a workday shall be paid at the rate of two times (2x) the regular straight-time rate.

**4. For employees on twelve (12) hour shifts.** Straight-time hourly rates shall apply up to a maximum forty (40) hours per workweek, or twelve (12) hours per workday. All work in excess of forty (40) hours in a workweek shall be paid at the rate of one and one-half times (1-½) the regular straight-time rate. All work in excess of twelve (12) hours per workday, shall be paid at the rate of two times (2x) the regular straight time hourly rate.

**5. No Pyramiding.** There shall be no pyramiding or compounding of overtime pay, meaning that there shall be no more than one overtime premium rate paid for the same hours worked. As an example, an employee paid at the overtime premium rate for daily overtime worked shall not receive an additional premium for weekly overtime if the daily overtime worked and paid at overtime causes the weekly hours to exceed forty (40).

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION                    6

Devor Decl., **Exhibit A**, SEIU CBA, Article 11(A) at pp. 11-12.

**ARTICLE 11, WORKWEEK. Section B, Consecutive Shifts.**

1.  When an employee works two (2) full consecutive shifts, totaling fifteen and one-half (15-½) hours, the second shift will be compensated at one and one half (1-½) the regular straight-time wage rate, up to twelve (12) hours, and at double-time (2x) for all work in excess of twelve (12) consecutive hours.  No employee shall be required to work two (2) shifts within a period of twenty-four (24) hours except in cases of emergency. "Emergency" is defined under the "Mandatory Overtime" section of this Agreement.

2. The definition of workweek or workday is not intended to avoid overtime payments for consecutive hours/shifts worked beyond the defined period.

Devor Decl., **Exhibit A**, SEIU CBA, Article 11(B) at p. 12.

**ARTICLE 11, WORKWEEK. Section D, Alternative Workweeks.** The parties agree to maintain all existing alternative workweek schedules currently in effect unless terminated by the Employer upon forty-five (45) days advance notice to the Union and affected employees, or by the affected employees upon a two-thirds (2/3) vote of the affected employees to terminate such arrangement. Should any new group of employees petition to work either ten (10) or twelve (12) hour shifts, the Employer shall grant due consideration to the feasibility of the request. Should it be determined that the request is feasible, then the parties will meet as soon as possible to agree on schedules and a date to conduct a joint secret ballot election of affected employees. A two-thirds (2/3) vote of the affected employees shall be required to establish the new alternative workweek. In cases of hardship, employees may request, and shall be granted whenever practicable, to continue their same shift in a unit or work area that converts to alternative scheduling, or to transfer to a unit or department that has an available schedule that meets the employee's needs.

Any new alternative workweek schedules require that the Employer first meet and bargain with the Union to arrive at a mutually satisfactory schedule and other issues related to the implementation of the new schedules.

Devor Decl., **Exhibit A**, SEIU CBA, Article 11(D) at p. 13.

**ARTICLE 22, CLASSIFICATION AND WAGES.** The minimum straight-time hourly rates of pay shall be shown in the Wage Scales of Appendices A, B, and C (attached hereto and made apart hereof).

Devor Decl., **Exhibit A**, SEIU CBA, Article 22 at p. 38, Appendices A-C.

**ARTICLE 22, CLASSIFICATION AND WAGES. Section E(1) Payday.**

a. All wages shall be paid on the basis of two-week payroll periods.

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION

7

b. The Employer' payday is on a Friday and this shall continue as the designated payday. Direct deposit shall continue to be offered to all employees and shall be deposited by no later than the designated payday and earlier if practicable. For those employees unable to have direct deposit at a bank or credit union, debit cards may also be used to directly deposit their paycheck. All paychecks and paystubs that are mailed shall be deposited in First Class U.S. Mail by 12:00 noon on the Thursday before payday.

c. When a holiday recognized by this Agreement falls on a payday, the employer will make every reasonable effort to provide the employees' checks on the day before the payday.

d. If the Employer uses symbols on payroll checks, such symbols shall be explained to an employee upon request. All records of paid time off accounts shall accurately reflect balances through the most recent pay period ending the date of the check.

e. Paycheck Errors. Paycheck errors resulting in underpayments of greater than eight hours pay shall be corrected immediately and a new check for the underpayment shall be issued to the employee within twenty-four (24) hours of the error being reported to the payroll department of the Employer, unless the error is reported on a Friday, in which case a new check will be available by noon (12pm) the following Monday.

Devor Decl., **Exhibit A**, SEIU CBA, Article 22, Section E (1)(a)-(e) at p. 39.

### 2.     Meal and Rest Periods

**ARTICLE 11. WORKWEEK,  Section F.  Rest and Meal Periods.** Employees who work scheduled shifts of five (5) hours or more are entitled to a duty-free, unpaid meal period of at least thirty (30) minutes. Employees who work in excess of five (5) hours but less than six (6) hours may voluntarily waive the meal period. Each employee shall be granted a paid rest period of ten (10) minutes per four (4) hours of work, or major fraction thereof. Employees who work twelve (12) hour shifts will be permitted to take three (3) ten (10) minute rest periods and will be given one (1) uninterrupted unpaid meal period of thirty (30) minutes during the first five (5) hours of the shift, and one (1) additional unpaid meal period of thirty (30) minutes during the second work period thereafter; however either the first or the second unpaid meal period may be waived in writing by the employee.

Devor Decl., **Exhibit A**, SEIU CBA, Article 11(F) at p. 13.

### 3.     Request for Records

**ARTICLE   30.   DISCIPLINE   AND   DISCHARGE,   Section   F. Disciplinary Notices, Rebuttal and Inspection of Personnel Files.**   1. There shall be one official personnel file for all bargaining unit employees and they shall have the right to inspect and to be provided, on request, with

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION                    8

1    one copy of any document in the employee's personnel file.

2    Devor Decl., **Exhibit A**, SEIU CBA, Article 11(F) at p. 54.

3    **4.**    **Paid Time Off and Sick Leave**

4    **ARTICLE 16. PAID TIME OFF (PTO) AND EXTENDED SICK
5    LEAVE (ESL).**  The Employer will continue to provide employees with a
     Paid Time Off (PTO) plan which may be used for vacation, holidays,
6    religious observances, personal or family business, maternity, disability or
     illness, health or dental appointments, and as supplement pay to State
7    Disability, Family Temporary Disability or Workers' Compensation, or
     other reasons deemed appropriate by the employee and in compliance with
8    the provisions of this Agreement. In addition, the Employer will continue
9    to provide eligible employees with an Extended Sick Leave (ESL) Plan, to
     be used in accordance with the provisions of this Agreement for severe or
10   long-term illness or injury.

11   Devor Decl., **Exhibit A**, SEIU CBA, Article 16 at p. 23.

12   **ARTICLE 16. PAID TIME OFF (PTO) AND EXTENDED SICK
     LEAVE (ESL), Section D. Use of PTO/ESL.**  1. PTO will be used for all
13   paid time off, including the first 24 scheduled work hours of any illness,
14   unless the absence qualifies for immediate use of ESL as outlined in Section
     D.6.C. of this Article, and with the exception of Jury Duty, Bereavement
15   Leave, and Paid Educational Leave. [. . .] 3. PTO and ESL will be paid at
     the base rate and will include shift differentials.
16

17   Devor Decl., **Exhibit A**, SEIU CBA, Article 16(D)(1), (3) at p. 23.

18   **5.**    **Payment Upon Termination**

19   **ARTICLE 16. PAID TIME OFF (PTO) AND EXTENDED SICK
     LEAVE (ESL), Section J. Payment of PTO and ESL on Termination or
20   Retirement.**  1. Eligible employees will be paid their accrued, unused PTO
     through the last day worked at their current rate of pay, including shift
21   differential, and the employee's PTO accrual rate will be reinstated if the
22   employee is rehired into a benefited position within one (1) year. 2. Accrued
     ESL will be paid to employees at termination or retirement if the employee
23   became a regularly scheduled employee of the Employer on or before May
     31, 1998, and is continuously employed by the Employer for twenty (20)
24   years as of the date of retirement or termination. 3. Except as provided in
     J.2. above, ESL will not be paid upon termination of employment. However,
25   if an employee is re-employed in a benefited position within one (1) year,
26   the employee's accrued ESL at the time of the termination will be reinstated.

27   Devor Decl., **Exhibit A**, SEIU CBA, Article 16(J) at p. 27.

28

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION                    9

6.      **Grievance and Arbitration**

**ARTICLE 29. GRIEVANCE AND ARBITRATION, Section A. Definition of Grievance.**   Grievance means a dispute raised by an employee, the Union or the Employer concerning the interpretation or application of any provision in this Agreement. Unless otherwise provided in this Agreement, a violation of this Agreement is subject to this Grievance and Arbitration Procedure set forth below.

Devor Decl., **Exhibit A**, SEIU CBA, Article 29(A) at p. 49.

**ARTICLE 29. GRIEVANCE AND ARBITRATION, Section B. Informal Resolution or Initiating a Grievance.**   The Employer and the Union agree that most disputes can and should be resolved by informal, frank discussions between the employee and his/her immediate supervisor, and the parties recognize that the goal of this procedure is to attempt to resolve the grievance as quickly as possible. Therefore, in the case of an individual grievance other than a discharge grievance, the aggrieved employee must first attempt to initiate such discussion with his/her supervisor before filing a formal grievance, unless the employee and the immediate supervisor agree that it is unnecessary, or the supervisor refuses to discuss the matter, or the grievance is directed at the immediate supervisor (e.g., a claim of Discrimination or Harassment under Article 5). . . . in the case of a discharge of an employee who has completed his/her initial Probation Period as described in Article 8, the grievance must be filed within fourteen (14) days of the date of discharge.

Devor Decl., **Exhibit A**, SEIU CBA, Article 29(B) at pp. 49-50.

7.    **Discipline and Discharge**

**ARTICLE 30, DISCIPLINE AND DISCHARGE, Section A. Just Cause.**   The Employer may only discipline or discharge any employee for just cause.

Devor Decl., **Exhibit A**, SEIU CBA, Article 30(A) at p. 53.

**ARTICLE 30, DISCIPLINE AND DISCHARGE, Section B. Progressive Discipline.**   Unless extraordinary circumstances warrant otherwise, the Employer will utilize a system of progressive discipline. Progressive steps shall include: 1. verbal counseling and/or warnings, 2. written counseling and/or warnings, 3. disciplinary suspensions without pay and 4. discharge from employment.

Devor Decl., **Exhibit A**, SEIU CBA, Article 30(B) at p. 53.

**C.     Relevant Collective Bargaining Agreement Provisions – CNA CBA**

The term of the CNA CBA in effect during the relevant years at issue in this lawsuit

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION                    10

employment was May 27, 2021, through May 4, 2024.  Devor Decl., ¶ 12, **Exhibits B-C**.  The provisions of the CNA CBA relevant to this Removal include the following:

    **1.**      <u>**Wage Rates and Overtime**</u>

**ARTICLE 7, COMPENSATION AND HOURS OF WORK. Section B. Straight Time Shifts and Workweek.**

1. The Employer may assign or schedule individual Nurses to alternative straight time shifts of up to twelve (12) hours (e.g., 10- or 12-hour shifts) with the agreement of the Nurses involved.

2. The Employer may also conduct a secret ballot election up to once per twelve (12) months on a unit-wide or service line (e.g., medical/surgical, critical care, surgical services, women's services, etc.) basis to determine whether the Nurses desire to work alternative straight time shifts. Upon an affirmative vote of a majority of the Nurses in the unit or service line, the Employer may elect to implement alternative shifts on the unit-wide or service line basis. Subject to staffing and the need to match shifts, the Employer will attempt to reasonably accommodate a Nurse for whom working an alternative shift presents a hardship at the time alternative shifts are implemented, which accommodation may include a transfer to a vacant position in another unit or department, provided the Nurse has the skills, abilities and experience necessary for the position. In the event that a Nurse cannot locate a vacant eight (8) hour position in another unit or department for which (s)he is qualified and/or in which (s)he is interested, the Nurse may request an additional period of up to ninety (90) calendar days in which to make personal arrangements necessary to accommodate the twelve (12) hour shifts, during which period the Employer will continue the Nurse's eight (8) hour schedule. Notwithstanding the preceding provision for converting to alternative shifts, the Employer will not convert to alternative shifts any Nurse who is employed as of January 14, 2002, the date of ratification by the Union, in a unit or department in which alternative shifts exist, but who is not working such shifts, unless it first notifies the Union of its intention to convert the shifts of such Nurse(s), and, upon the Union's request, bargains over the conversion(s).

Devor Decl., **Exhibit B**, CNA CBA, Article 7(B) at pp. 9-10.

**ARTICLE 7, COMPENSATION AND HOURS OF WORK. Section C, Overtime.**

1. Nurses employed to work eight (8) hour shifts will be employed under the 8/80 plan and will receive overtime premium of one- and one-half times (1 1/2 x) their regular rate for all hours worked in excess of eight (8) hours per work day and for all hours in excess of eighty (80) in a fourteen (14) day pay period, in accordance with the provisions of the Fair Labor Standards Act, as amended.

2. Nurses employed to work alternative shifts (e.g., 10- or 12-hour shifts) will receive overtime premium equal to one- and one-half times (1.5 x) their

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION

11

regular rate for all hours in excess of forty (40) in a workweek.

3. A Nurse will receive premium pay equal to twice (2 x) his/her regular time rate for all hours worked in excess of twelve (12) hours in a workday.

Devor Decl., **Exhibit B**, CNA CBA, Article 7(C) at p. 10.

**ARTICLE 7, COMPENSATION AND HOURS OF WORK. Section D, Workday and Workweek.**

The "workday" and "workweek" will be a standard period of time for all employees. The workweek will begin at 2400 (midnight) on Sunday and continue through 2359 on the following Saturday. The workday is the twenty-four (24) hour period beginning at 2400 (midnight) and continuing through the following 2359.

Devor Decl., **Exhibit B**, CNA CBA, Article 7(D) at p. 10.

**APPENDIX A - WAGES.**

**Wage Ranges** CNA Bargaining Unit During the life of this Agreement, wages for the classifications covered by this Agreement will be as follows:

| Effective January 9, 2022 - 3.0% Increase | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 20 Year Rate | 25 Year Rate | 30 Year Rate |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Registered Nurse | 46.69 | 48.10 | 49.55 | 51.03 | 52.55 | 54.13 | 55.78 | 57.42 | 59.15 | 60.92 | 62.75 | 64.63 | 66.59 | 68.59 | 70.66 |
| RN, Lactation Specialist | 46.69 | 48.10 | 49.55 | 51.03 | 52.55 | 54.13 | 55.78 | 57.42 | 59.15 | 60.92 | 62.75 | 64.63 | 66.59 | 68.59 | 70.66 |
| RN, Diabetes Care Specialist | 47.91 | 49.34 | 50.80 | 52.35 | 53.90 | 55.54 | 57.21 | 58.93 | 60.68 | 62.49 | 64.38 | 66.31 | 68.28 | 70.34 | 72.45 |
| RN, First Assist | 51.60 | 53.15 | 54.74 | 56.38 | 58.07 | 59.79 | 61.62 | 63.50 | 65.35 | 67.31 | 69.34 | 71.42 | 73.57 | 75.78 | 78.05 |

| Effective January 8, 2023 - 3.5% Increase | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 20 Year Rate | 25 Year Rate | 30 Year Rate |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Registered Nurse | 48.32 | 49.78 | 51.28 | 52.82 | 54.39 | 56.02 | 57.73 | 59.43 | 61.22 | 63.05 | 64.95 | 66.89 | 68.92 | 70.99 | 73.13 |
| RN, Lactation Specialist | 48.32 | 49.78 | 51.28 | 52.82 | 54.39 | 56.02 | 57.73 | 59.43 | 61.22 | 63.05 | 64.95 | 66.89 | 68.92 | 70.99 | 73.13 |
| RN, Diabetes Care Specialist | 49.59 | 51.07 | 52.58 | 54.18 | 55.79 | 57.48 | 59.21 | 60.99 | 62.80 | 64.68 | 66.63 | 68.63 | 70.67 | 72.80 | 74.99 |
| RN, First Assist | 53.41 | 55.01 | 56.66 | 58.35 | 60.10 | 61.88 | 63.78 | 65.72 | 67.64 | 69.67 | 71.77 | 73.92 | 76.14 | 78.43 | 80.78 |

Devor Decl., **Exhibit B**, CNA CBA, Appendix A at pp. 67-69.

**2.** **Meal and Rest Periods**

**ARTICLE 7, WORKWEEK. Section K, Break and Meal Periods.**

1. Nurses will receive a ten (10) minute paid break for each four (4) hours of work or a major fraction thereof, and an unpaid meal period of thirty (30) minutes for a shift in excess of five (5) hours. The Employer may determine when the breaks and meal period are to be taken, but the meal period will be scheduled or taken near the middle of the scheduled shift where practicable. If it appears to a Nurse that (s)he will not be able to take a break or a meal period as provided for in this section, the Nurse must inform his/her Charge Nurse/supervisor promptly, so that the supervisor may have the opportunity to obtain relief for the employee if practicable. Breaks and

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION

12

the meal period may not be combined, nor may a break be taken at the beginning or end of a shift to alter shift starting or ending times.

2. It is recognized, however, that the nature of the Nurses' patient care duties, the variability of the patients' conditions and needs, as well as changes in census are such that circumstances may not always permit a Nurse to receive a meal period free from all duty. As an exception to the unpaid meal break requirement, when the Nurse's position requires that the Nurse remain on duty during his/her meal period, the Nurse will be paid for the on-duty meal period at the applicable straight time or overtime rate.

3. The Employer is responsible for making meal periods and rest breaks available to nurses, including providing qualified break relief. Qualified break relief shall be a competent Registered Nurse who is immediately available to care for the patients of the Nurse being relieved. The Employer shall provide nurses with a system for reporting missed meal periods and rest breaks. No Nurse shall be disciplined, negatively evaluated, or otherwise retaliated against for not taking breaks when qualified relief is not provided.

Devor Decl., **Exhibit B**, CNA CBA, Article 7(K) at p. 14.

### 3.   Request for Records

**ARTICLE 24, EMPLOYEE PERSONNEL FILES. Section A, Employee Access.**   A Nurse may inspect his/her own personnel file at reasonable times during normal business hours upon his/her request. The Employer will provide the Nurse with a copy of letters of appreciation, status change forms, performance evaluations and written disciplinary documents before or at the time they are placed in the Nurse's personnel file.

Devor Decl., **Exhibit B**, CNA CBA, Article 24(A) at p. 53.

### 4.   Paid Time Off and Sick Leave

**ARTICLE 8, PAID TIME OFF AND EXTENDED SICK LEAVE. Section A, Purpose of PTO.**   The parties recognize the need to provide eligible employees with paid periods of time away from work to rest and attend to personal needs.  PTO hours are used to provide pay for hours not worked due to:

1. Absences related to personal illness or accident to the extent not covered by disability income plans or ESL.
2. Family needs/responsibilities.
3. Recognized holidays.
4. Vacation days.
5. Other reasons.

Paid leave for bereavement, attendance at educational programs, and jury duty are covered by separate Articles elsewhere in this Agreement.

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION                    13

Devor Decl., **Exhibit B**, CNA CBA, Article 8(A) at p. 18.

> **ARTICLE 8, PAID TIME OFF AND EXTENDED SICK LEAVE. Section B, Eligibility for PTO/ESL.** All Regular Full-time and Regular Part-time Nurses are eligible to participate in the PTO program. PTO hours accrue immediately upon employment or reclassification in a Regular Status as defined in Article 6 above and may be used as they are accrued.

Devor Decl., **Exhibit B**, CNA CBA, Article 8(B) at p. 18.

> **ARTICLE 8 – PAID TIME OFF AND EXTENDED SICK LEAVE, Section E, Use of PTO to Cover Personal Illness/Disability.**
>
> PTO hours are used to cover up to the first twenty-four (24) work hours missed due to personal illness/injury, unless the absence qualifies for a waiver of waiting period as outlined in Section F.2. below. If the Nurse has insufficient PTO to cover this period, it is taken off without pay.

Devor Decl., **Exhibit B**, CNA CBA, Article 8(E) at p. 20.

**5.**     <u>**Payment Upon Termination**</u>

> **ARTICLE 8, PAID TIME OFF AND EXTENDED SICK LEAVE. Section I, PTO Scheduling. Section 11, Payout of PTO/ESL Upon Termination or Change to Per Diem/Casual Status**. Accrued but unused PTO will be paid to the Nurse upon termination of employment or conversion from Regular status to Per Diem or Casual status. Accumulated ESL will not be paid upon termination or conversion to Per Diem or Casual status; provided, however, that should the Nurse be re-employed in a Regular status or convert from Per Diem or Casual status within twelve (12) months following the Nurse's termination or conversion to Per Diem or Casual status from Regular status, the Nurse's accumulated ESL at the time of such prior termination or conversion will be reinstated. As an exception to the preceding provision, accumulated ESL will be paid to a maximum of four hundred (400) hours to an employee at termination or retirement if the employee became a regularly scheduled employee on or before May 31, 1998 and is continuously employed by the Employer for twenty (20) years.

Devor Decl., **Exhibit B**, CNA CBA, Article 8(I)(11) at p. 24.

**6.**     <u>**Grievance and Arbitration**</u>

> **ARTICLE 22, GRIEVANCE AND ARBITRATION. Section A, Definitions.** 1. Grievance. A grievance is defined as a dispute arising during the stated term of this Agreement concerning the interpretation or application of any provision of this Agreement, or concerning whether or not discipline, including discharge, is for just cause, as defined in Article 19, Section B of this Agreement.

Devor Decl., **Exhibit B**, CNA CBA, Article 22(A)(1) at p. 48.

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION      14

**ARTICLE 22, GRIEVANCE AND ARBITRATION. Section B, Procedure.** It is the shared view of the Employer and the Union that most disputes should be resolved by informal, frank discussions between the Nurse and his/her immediate supervisor, and the parties recognize that the goal of this procedure is to attempt to resolve the grievance at the lowest level as quickly as possible. Therefore, in the case of an individual grievance other than a discharge grievance, the Nurse must initiate such discussions prior to filing a formal complaint, unless the Nurse and the immediate supervisor agree that it is unnecessary, or unless the grievance is directed at the immediate supervisor (i.e., a claim of discrimination under Article 4, Section A). The Nurse may elect to be accompanied by a Nurse Representative. If the result of these discussions is unsatisfactory, the Nurse may elect to initiate the grievance resolution procedure set forth below. A grievant may be accompanied by a Nurse Representative or a Union Representative at meetings held at any step of this procedure. . . .

Devor Decl., **Exhibit B**, CNA CBA, Article 22(B) at pp. 48-49.

## V.   LEGAL ANALYSIS

Plaintiff pleads eleven causes of action, nine of which are styled as state law claims involving violations of wage and hour provisions of the California Labor Code, IWC Wage Orders, and Unfair Competition Law ("UCL"), and two of which are for discrimination, retaliation, and wrongful termination under California law.

Plaintiffs' overtime, Labor Code Section 204, vacation pay upon termination, and sick pay claims are preempted under Section 301 because such claims are necessarily contractual claims under the CBAs; California state law does not apply to such claims because of an express exemption in the Labor Code.  Plaintiffs' derivative claims (for minimum wages, waiting time penalties under Labor Code Section 203, wage statement penalties under Labor Code Section 226, and for restitution under the UCL), are preempted under Section 301 because such claims rise or fall based on the underlying substantive (and preempted) overtime and sick pay claims.  With regard to Plaintiffs' minimum wage, meal and rest break claims, these claims are also preempted by Section 301 because the resolution of such claims requires interpretation of the CBA.  Lastly, as to Plaintiffs' minimum wage claim, as well as their expense reimbursement claim and any other claims which are not otherwise preempted, the Court has supplemental jurisdiction over these claims because they are part of the same case or controversy as Plaintiffs' preempted claims.  Thus, this entire action is preempted by Section 301.

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION

15

1

**A.      The Section 301 Preemption Analysis – Legal Standard**

Section 301 completely preempts all claims that are based on, or require the interpretation of, a collective bargaining agreement.  *United Steelworkers of America v. Rawson*, 495 U.S. 362, 368–69 (1990); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209–11 (1985); *Associated Builders & Contractors, Inc. v. Local 302 International Brotherhood of Electrical Workers*, 109 F.3d 1353, 1356–57 (9th Cir. 1997) (Section 301 is construed "quite broadly to cover most state-law actions that require interpretation of labor agreements").

Section 301 preemption furthers two important federal policies.  First, it ensures that the interpretation of collective bargaining agreements remains uniform and independent of state law. *Teamsters v. Lucas Flour Co*., 369 U.S. 95, 103–04 (1962) (inconsistent interpretations would "inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements").  Second, the complete preemption doctrine gives effect to the parties' mutual promise to resolve disputes through the grievance-arbitration process and furthers the strong federal policy that labor disputes "remain[] firmly in the arbitral realm."  *Lingle v. Norge Div. of Magic Chef*, 486 U.S. 399, 411 (1988).  This Court has subject matter jurisdiction over—and thus a defendant may properly remove—any ostensible state law claim preempted by Section 301.   *Franchise Tax Board v. Construction Laborers*, 463 U.S. 1, 24 (1983); Allis-Chalmers Corp., 471 U.S. at 220 (if preempted, the "claim must either be treated as a § 301 claim ... or dismissed").

A Section 301 preemption analysis has two steps:

<u>Step One</u>.  Courts must first inquire whether the relief requested by a plaintiff "involves a right [that] exists solely as a result of the CBA."  *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (internal citations and quotations omitted).  Under *Curtis*, where an asserted Labor Code or Wage Order claim is covered by an available CBA exemption – such that there exists no valid underlying state law claim – the Section 301 preemption inquiry is resolved at this first step.  This is because, in the case of a state law overtime claim (for example), if Labor Code Section 510 and 511 do not apply (due to the application of the CBA exemption found in Labor Code Section 514), any pleaded overtime claim is necessarily a contractual claim governed by the CBA.  *See, e.g., Giles v. Canus Corp.*, 2022 WL 3370793, *4-5 (N.D. Cal. Aug. 16, 2022) (applying *Curtis*).

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION                                16

Step Two.  If, and only if, there is no preemption found at the first step of the analysis, courts proceed to the second step of the Section 301 preemption analysis, which asks "whether a plaintiff's state law right is substantially dependent on analysis of the CBA." *Curtis*, 913 F.3d at 1153.  Under this second step, even where there is no applicable CBA exemption, Section 301 preemption still applies if the resolution of a plaintiff's minimum wage claim (for example) requires interpretation of the CBA.  *See Mellon v. Universal City Studios*, LLC, 625 F. Supp. 3d 1007, 1014-1016 (2022) (denying motion to remand because "resolution of [plaintiff's] minimum wage claim will require interpreting the CBA to determine whether he was compensated for time spent undergoing security checks through Article 27."); *Giles*, *supra*, 2022 WL 3370793, *6 (holding minimum wage claim preempted because resolving that claim would require an interpretation of terms "actual time worked" and "show-up pay" as used in the CBA).

Notably, whether Plaintiffs' operative pleading mentions the CBA is not relevant to the Section 301 preemption analysis.  *Curtis*, 913 F.3d at 1152; *Radcliff v. San Diego Gas & Elec. Co.*, 519 F. Supp. 3d 743, 750 (S.D. Cal. 2021); *Mellon*, 625 F. Supp. 3d at 1014; *Ayon v. Zero Waste Sols., Inc*, 2021 WL 4065716, *3 (E.D. Cal. Sept. 7, 2021).

## B.  Plaintiffs' Third Cause of Action (Overtime) is Preempted Under *Curtis* Step One

In Plaintiffs' Third Cause of Action, they assert that "as a result of implementing a policy and practice that failed to accurately record overtime worked . . . [Enloe] denied accurate compensation to Plaintiffs . . . for overtime worked."  Complaint ¶ 85.  However, Plaintiffs have no valid state law overtime claim because the Labor Code Section 514 exemption applies.  Section 514 provides an overtime exemption where:

> "an employee [is] covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage."

The section 514 exemption applies here because: (i) both the SEIU and CNA CBAs provide for a range of wages, hours, and working conditions (*see* provisions quoted in Sections IV(B)(1) and IV(C)(1)); (ii) the CBAs provide premium wage rates for all overtime hours worked (*id.*); and (iii) the

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION                   17

CBAs provide hourly rates of pay in excess of 30 percent above the then-current California minimum wage (*id.*).  During Plaintiff Lovgren's final year of employment, he earned a base wage rate of $29.46. *Id.*

In addition, Labor Code section 510 provides that its requirements "do not apply to the payment of overtime compensation to an employee working pursuant to . . . (2) [a]n alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to [California Labor Code] Section 514." Cal. Lab. Code § 510(a)(2).  Both the SEIU and CNA CBAs provide for alternative workweek schedules for some employees.  *Id.*

Accordingly, the Section 514 overtime exemption, which has been construed and applied broadly by state and federal courts, applies here.  S*ee Vranish v. Exxon Mobil Corp.*, 223 Cal. App. 4th 103, 109 (2014) (where Section 514's requirements are met, an employer is only required to pay for overtime as defined by the collective bargaining agreement and Section 510 simply does not apply); *Curtis*, 913 F.3d at 1154-55 ("While Section 510 establishes a default definition of overtime applicable to non-unionized employees, unionized employees 'have sought and received alternative wage protections through the collective bargaining process'") (*citing Vranish* and *quoting Firestone v. S. Cal. Gas Co.*, 219 F.3d 1063, 1067 (9th Cir. 2000)).

Where, as here, the Section 514 exemption applies, the "right to overtime 'exists solely as a result of the CBA,'" and therefore "is preempted under § 301." *Curtis*, 913 F.3d at 1154; *accord, e.g., Giles*, *supra,* 2022 WL 3370793, *4; *Braswell v. AHMC San Gabriel Valley Med. Ctr. LP*, 2022 U.S. Dist. LEXIS 42113, *11 (C.D. Cal. Mar. 8, 2022); *Rodriguez v. Gonsalves & Santucci, Inc.*, 2022 WL 161892, *4 (N.D. Cal. Jan. 18, 2022) (*citing Curtis*, 913 F.3d at 1153-55);  *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1203-04 (C.D. Cal. 2015) (same).   Accordingly, Plaintiffs' Third Cause of Action for unpaid overtime is preempted under Section 301.

**C.** **Plaintiffs' Claim for Failure to Pay Wages When Due is Preempted by Section 301.**

Within Plaintiffs' Second and Third Causes of Action for Failure to Pay Minimum Wages and Overtime, they also assert that Enloe violated Labor Code Section 204 by failing to timely pay its employees for all hours worked.  Compl., ¶¶ 16-17, 67, 81.  However, Labor Code Section 204 does

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION                    18

1    not apply "when employees are covered by a collective bargaining agreement that provides different
2    pay arrangements."  Lab. Code § 204(c).  Thus, as is the case with overtime claims, California state
3    law wage payment claims under Section 204 are waivable and negotiable as to Union-represented
4    employees.  *Hall*, *supra*, 146 F. Supp. 3d at 1203-04 (holding Section 204 claim preempted under
5    Section 301 where CBA contained its own pay timing rules).

6         Here, the SEIU CBA provides for the timing of wage payments – and specifically, for two-
7    week payroll periods.  *See* Section IV(B)(1).  Thus, Plaintiffs' Section 204 claim in their PAGA cause
8    of action is preempted under Section 301.  *Hall*, 146 F. Supp. 3d at 1203-04; *accord Bradford v. Prof'l*
9    *Tech. Sec. Servs.*, 2020 WL 2747767, *5 (N.D. Cal. May 27, 2020) ("Because the CBA here provides
10   for a different pay arrangement than the statute, [plaintiff's] right to timely payment exists solely as a
11   result for the CBA and is preempted."); *Ariola v. Raytheon CA Techs Corp* 2023 U.S. Dist. LEXIS
12   158377 *21-*25 (C.D. Cal., September 6, 2023) (finding that a bi-weekly pay arrangement is distinct
13   from the section 204(a) requirement to make semi-monthly payments, and further holding that
14   [Plaintiff's] claim under Section 204 was preempted).

15       **D.**    **Plaintiffs' Ninth Cause of Action (Sick Pay) is Preempted by Section 301.**

16        In Plaintiffs' Ninth Cause of Action, they allege that Enloe violated Labor Code Sections 201-
17   203, 210, 233 and 246 by failing to pay its employees sick pay at the regular rate of pay.  Compl., ¶¶
18   118-121.  However, Labor Code 246 does not cover an "employee" who is:

19           covered by a valid collective bargaining agreement if the agreement
20           expressly provides for the wages, hours of work, and working
             conditions of employees, and expressly provides for paid sick days or a
21           paid leave or paid time off policy that permits the use of sick days for
             those employees, final and binding arbitration of disputes concerning
22           the application of its paid sick days provisions, premium wage rates for
             all overtime hours worked, and regular hourly rate of pay of not less
23           than 30 percent more than the state minimum wage rate.

24   Labor Code § 245.5(a)(1).  Thus, as is the case with overtime and wage timing claims, California state
25   law sick pay claims under Section 246 are waivable and negotiable as to Union-represented
26   employees.

27        Here, as established above: (i) both CBAs provide for a range of wages, hours, and working
28   conditions (*see* provisions quoted in Section IV(B)(1) and IV(C)(1)); (ii) both CBAs provide premium

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION    19

wage rates for all overtime hours worked (*id.*); and (iii) both CBAs provide hourly rates of pay well in excess of 30 percent above the then-current California minimum wage (*id*.).  Finally, Article 16 of the SEIU CBA and Article 8 of the CNA CBA require paid time off, including sick leave.  *See* Sections IV(B)(4) and IV(C)(4).  Thus, Plaintiffs' Ninth Cause of Action is preempted under Section 301.

### E.  Plaintiffs' Labor Code Section 227.3 Claim is Preempted by Section 301.

Within their Eighth Cause of Action for Failure to Pay Wages When Due, Plaintiffs also allege that Enloe violated Labor Code Section 227.3 by failing to pay its employees their "vested vacation time as wages due upon employment termination, in violation of the California Labor Code, Sections 201, 202, 203 and 227.3."  Compl., ¶ 115.  However, Labor Code 227.3 expressly states that it applies "[u]nless otherwise provided by a collective-bargaining agreement" – in other words, that a CBA determines the rules with respect to whether and what vacation is paid out to an employee covered by a CBA.  Here, as established above, both the SEIU and CNA CBAs provide for a range of wages, hours, and working conditions.  *See* provisions quoted in Sections IV(B)(5) and IV(C)(5).  As such, the Court must construe the vacation provisions of the CBAs to determine what, if any, vacation pay was required to be paid out to employees at the time of termination.  Thus, Plaintiffs' Section 227.3 claim is also preempted under Section 301.

### F.  Plaintiffs' Derivative Unfair Business Practices, Untimely Wage/Waiting Time, and Wage Statement Causes of Action Are Preempted Under *Curtis* Step One.

Plaintiffs' First Cause of Action (Unlawful Business Practices), Eighth Cause of Action (Failure to Pay Wages When Due under Labor Code Sections 201-203) and Sixth Cause of Action (Failure to Provide Accurate Itemized Wage Statement under Labor Code section 226) are all, in whole or in part, derivative of Plaintiffs' claims that are preempted under Section 301 for the reasons described above.  *See* Compl., ¶¶ 18-24.  All of these derivative claims are preempted under Section 301 for this reason.  *Giles*, *supra,* 2022 WL 3370793, *6-7; *Rodriguez*, *supra,* 2022 WL 161892, *6; *Mellon*, *supra,* 625 F. Supp. 3d 1007, 1014 ; *Jimenez v. Young's Mkt. C*o., 2021 WL 5999082, *13 (N.D. Cal. Dec. 20, 2021); *Vasquez v. Packaging Corp. of Am*., 2019 WL 4543106, *4 (C.D. Cal. Jun. 7, 2019).

Furthermore, Plaintiffs' Eighth Cause of Action (Failure to Pay Wages When Due) would be

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION

20

1  preempted under Section 301 in any event, under Step Two of the *Curtis* analysis, because this claim

2  requires the interpretation and application of detailed provisions regarding the timely payment of

3  wages, payment of overtime, and provision of meal periods the CBAs.  *See Curtis*, 913 F.3d at 1153.

4  But the Step Two analysis is unnecessary where, as here, preemption under Step One is so clear.

5  **G.    Plaintiffs' Second Cause of Action (Failure to Pay Minimum Wages) Is Preempted**
   **Under *Curtis* Step One and Step Two.**

6

7          Plaintiffs' Second Cause of Action for Failure to Pay Minimum Wages under Labor Code

8  sections 1194,1197, and 1197.1 is also preempted because the claim arises out of Plaintiffs' preempted

9  overtime claim and requires interpretation of the CBA.  Even if it were not preempted, the Court would

10  have supplemental jurisdiction over this claim.

11          Plaintiffs allege that employees "forfeit minimum wage, overtime wage compensation, and

12  off-duty meal breaks by working without their time being correctly recorded and without

13  compensation at the applicable rates."  Compl., ¶¶ 9, 14, 70.  Plaintiffs do not allege that they were

14  scheduled for a day as to which overtime obligations would not attach *if* Plaintiffs had worked more

15  time than that for which they were paid (*e.g.*, Plaintiff do not allege that they ever worked less than 8

16  hours in a day).  In all respects, Plaintiffs mix together the alleged factual bases for the minimum wage

17  and overtime claims, without differentiation.  Compl., *passim*.  Collectively, the claims in Paragraphs

18  65 through 78 of the Complaint, and the lack of any additional supporting detail for the minimum

19  wage claim, make it clear that Plaintiffs' so-called "minimum wage" claim is inseparable from

20  Plaintiffs' overtime claim.

21          Plaintiffs' minimum wage claim, lacking any independent life, is preempted for the same

22  reason as Plaintiffs' overtime claim.  *See Chavez v. Smurfit Kappa N. Am. LLC,* 2018 WL 8642837,

23  *4 (C.D. Cal Oct 17, 2018) (holding that a minimum wage claim, that could only arise out of plaintiff's

24  preempted overtime claim, was also preempted under section 301); *and see also Rodriguez*, *supra*,

25  2022 WL 161892, *6 ("because the claim for unpaid minimum wages substantially depends on an

26  analysis of the CBA, the LMRA preempts the claim."); *Giles*, *supra*, 2022 WL 3370793, *6; *Mellon*,

27  *supra,* 625 F. Supp. 3d 1007, 1014.

28          In the alternative, Plaintiffs' minimum wage claim is preempted under *Curtis* Step Two

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

because interpretation of the various provisions of the CBA requiring pay for all hours worked is required to resolve the minimum wage claim. *See Rodriguez*, *supra*, 2022 WL 161892, at *5 (finding, where plaintiff alleged "defendant failed to pay minimum wages for off-the-clock activity," resolution of minimum wage claim required, "[a]t minimum, ... interpretation of CBA terms such as 'actual hours worked' and 'show up expenses'"); *Giles*, *supra*, 2022 WL 3370793, at *6 (minimum wage claim preempted because resolving that claim would require interpretation of contractual terms "actual time worked" and "show-up pay"); *Mellon*, *supra*, 625 F. Supp. 3d 1007, 1014 (denying motion to remand because "resolution of [plaintiff's] minimum wage claim will require interpreting the CBA to determine whether he was compensated for time spent undergoing security checks").

In any event, if the Court finds that any portion of Plaintiffs' minimum wage claim is not preempted, the Court has supplemental jurisdiction because any non-preempted claims form part of the same case or controversy as the preempted claims. *See Gay v. Pac Steel Grp*, 2021 WL 2917095, *3 (N.D. Cal Jun. 15, 2021) (finding supplemental jurisdiction for minimum wages, unpaid wages, non-compliant wage statements, and other claims when overtime, meal period, and rest period claims were preempted).

## H.    Plaintiffs' Fourth and Fifth Causes of Action (Failure to Provide Required Meal and Rest Periods) Are Preempted Under *Curtis* Step Two

In their Fourth and Fifth Causes of Action, Plaintiffs allege that Enloe failed to provide legally-required off-duty meal and rest breaks to employees, did not ensure that employees were not interrupted during breaks, and failed to properly compensate employees for non-compliant breaks. Compl., ¶¶ 9, 95-96, 99-100.

Section 301 preemption applies to Plaintiffs' Fourth and Fifth Causes of Action, because this "state law right is substantially dependent on analysis of the CBA." *See Curtis*, 913 F.3d at 1153. Here, both the SEIU and CNA CBAs provide detailed rules for meal and rest periods. (*See* provisions quoted in Sections IV(B)(2) and IV(C)(2), *supra*.) Therefore, resolution of Plaintiffs' meal and rest period claims will also require analysis of the CBAs given that the CBAs specifically provide for and define meal and rest periods. *See Marquez v. Toll Global Forwarding (USA), Inc.*, No. 2:18-cv-03054-ODW (ASx), 2018 WL 3218102, at *3-4 (C.D. Cal. June 28, 2018) (granting a motion to dismiss on

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION

22

section 301 preemption grounds where evaluating meal and rest period agreements in a CBA "will require more than merely applying the terms of the CBA. It will require interpretation, and the parties will likely dispute the meaning of these terms."). The past practices of the parties, deemed part of the CBAs, will also factor into this analysis. *See Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 307 (1989) ("[C]ollective bargaining agreements may include implied, as well as express, terms … it is well established that the parties' 'practice, usage and custom' is of significance in interpreting their agreement." (quoting *Transportation Union v. Union Pacific R. Co.*, 385 U.S. 157, 161 (1966)).  In any event, if the Court finds that any portion of Plaintiffs' minimum meal and rest claims are not preempted, the Court has supplemental jurisdiction because any non-preempted claims form part of the same case or controversy as the preempted claims.

### I.    Plaintiff Lovgren's Tenth and Eleventh (Discrimination and Retaliation Under FEHA and Constructive Discharge) Are Preempted Under *Curtis* Step Two

In his Tenth Cause of Action, Plaintiff Lovgren alleges that Enloe violated FEHA, California Government Code section 12900, *et seq.*, by taking adverse employment actions against him in part because of his gender and good faith complaints regarding sexual harassment.  Compl., ¶¶ 124-129.  In his Eleventh Cause of Action, Plaintiff Lovgren alleges that Enloe retaliated against him as a direct consequence of his complaints.  Compl., ¶¶ 132-137.

Section 301 preemption applies to Plaintiffs' Tenth and Eleventh Causes of Action, because this "state law right is substantially dependent on analysis of the CBA." *See Curtis*, 913 F.3d at 1153.  Here, the SEIU and CBA provides detailed rules for resolution of grievances, as well as discipline and discharge.  *See* provisions quoted in Sections IV(B)(6) and IV(B)(7).  In addition, Defendant's defense to this claim would be that its actions in terminating Plaintiff Lovgren's employment were legitimate and non-retaliatory actions authorized by the SEIU CBA.

### J.    The Court Has Supplemental Jurisdiction Over Plaintiffs' Remaining Claims

If this Court finds that any claims in the Complaint are not preempted by Section 301, the entire action is still removable under 28 U.S.C. § 1441(c) because this Court has supplemental jurisdiction under 28 U.S.C. § 1367.  All claims in the Complaint are sufficiently related to form part of the same case or controversy. *See Giles*, *supra,* 2022 WL 3370793, *6 (court exercised

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION

23

1  supplemental jurisdiction over non-preempted rest break claim where overtime, meal break and

2  minimum wage claims were preempted by Section 301); *Jimenez, supra,* 2021 WL 5999082, \*21

3  (exercising supplemental jurisdiction over non-preempted wage claims because such claims "arose

4  from the same working conditions and relationship" as the preempted overtime and meal period

5  claims).

6  **VI.    CONCLUSION**

7          For the reasons provided herein, Defendant hereby removes this action from the California

8  Superior Court, in and for the County of Butte, to the United States District Court, Eastern District of

9  California.   Defendant respectfully requests that this Court retain jurisdiction for all further

10  proceedings.

11  Dated: April 16, 2024                          LITTLER MENDELSON, P.C.

12

13                                           */s/ Barbara A. Blackburn*
                                             Barbara A. Blackburn
14                                           Douglas L. Ropel
                                             Lauren J. Orozco
15                                           Attorneys for Defendant
                                             ENLOE MEDICAL CENTER
16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
500 Capitol Mall, Suite 2000
Sacramento, CA 95814
916.830.7200

NOTICE TO FEDERAL COURT OF
REMOVAL OF CIVIL ACTION                    24